IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

------------------------------------------------

HAROLD BEARDSLEY, STEVEN BURDA,
and BRAD SMITH derivatively on behalf of the
COLUMBIA DISCIPLINED VALUE FUND,
COLUMBIA INTERNATIONAL EQUITY
FUND, COLUMBIA LARGE CAP GROWTH
FUND, COLUMBIA MID CAP GROWTH
FUND, COLUMBIA MID CAP VALUE FUND,
COLUMBIA REAL ESTATE EQUITY FUND,
COLUMBIA SMALL CAP VALUE FUND,
COLUMBIA SMALL COMPANY EQUITY
FUND, COLUMBIA HIGH YIELD FUND,
COLUMBIA QUALITY PLUS BOND FUND,
COLUMBIA GROWTH FUND, COLUMBIA
ACORN FUND, COLUMBIA ACORN TRUST,
INC., COLUMBIA FUNDS TRUSTS[1],
and the "COLUMBIA FUNDS[2],"

        Plaintiffs,

      v.

FLEETBOSTON FINANCIAL CORPORATION,
FLEET NATIONAL BANK, COLUMBIA
MANAGEMENT GROUP, INC.,
COLUMBIA FUND SERVICES, INC.,
COLUMBIA WANGER ASSET MANAGEMENT,
COLUMBIA MANAGEMENT ADVISORS, INC.,
COLUMBIA FUNDS DISTRIBUTOR, INC.,
JOHN DOES 1-4, MARGARET EISEN, LEO
GUTHART, JEROME KAHN, JR., STEVEN N.
KAPLAN, DAVID C. KLEINMAN, ALLAN B.
MUCHIN, JOHN A. WING, CHARLES P.
MCQUAID, RALPH WANGER, DOUGLAS A.
HACKER, JANET LANGFORD KELLY,
RICHARD W. LOWRY, CHARLES R. NELSON,
JOHN J. NEUHAUSER, PATRICK J. SIMPSON,
THOMAS E. STITZEL, THOMAS C.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

04   10978 ~~MEL~~   PBS

CIVIL ACTION
NO.

MAGISTRATE JUDGE _Alexander_

RECEIPT # _____ 55931
AMOUNT $ _150_
SUMMONS ISSUED _yes_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _5/14/04_

JURY TRIAL DEMANDED

DERIVATIVE COMPLAINT

------------------------------------------------

(Caption continues on next page)

---

[1] As defined in ¶¶27, 41.

[2] A list of the "Columbia Funds" is attached to this Derivative Complaint ("Complaint") as Exhibit A.

```
                                                    :
THEOBALD, ANNE-LEE VERVILLE, RICHARD:
L. WOOLWORTH, WILLIAM E. MAYER,     :
JOSEPH R. PALOMBO, ILYTAT, L.P.;    :
RITCHIE CAPITAL MANAGEMENT, INC.;   :
EDWARD J. STERN, CANARY CAPITAL     :
PARTNERS LLC, CANARY CAPITAL        :
PARTNERS LTD., CANARY INVESTMENT    :
MANAGEMENT, LLC, DANIEL CALUGAR,    :
SAL GIACALONE, D.R. LOESER, SIGNALERT :
CORPORATION, ALAN WALDBAUM,         :
TANDEM FINANCIAL SERVICES, and      :
JOHN DOES 5-100,                    :
                                    :
            Defendants,             :
                                    :
        and                         :
                                    :
COLUMBIA DISCIPLINED VALUE FUND,    :
COLUMBIA INTERNATIONAL EQUITY       :
FUND, COLUMBIA LARGE CAP GROWTH     :
FUND, COLUMBIA MID CAP GROWTH       :
FUND, COLUMBIA MID CAP VALUE FUND,  :
COLUMBIA REAL ESTATE EQUITY FUND,   :
COLUMBIA SMALL CAP VALUE FUND,      :
COLUMBIA SMALL COMPANY EQUITY       :
FUND, COLUMBIA HIGH YIELD FUND,     :
COLUMBIA QUALITY PLUS BOND FUND,    :
COLUMBIA GROWTH FUND, COLUMBIA      :
ACORN FUND, COLUMBIA ACORN TRUST,   :
INC., COLUMBIA FUNDS TRUSTS and the :
"COLUMBIA FUNDS",                   :
                                    :
        Nominal defendants.         :
                                    :
```

Plaintiffs Harold Beardsley, Steven Burda and Brad Smith, derivatively on behalf of the Columbia Disciplined Value Fund, Columbia International Equity Fund, Columbia Large Cap Growth Fund, Columbia Mid Cap Growth Fund, Columbia Mid Cap Value Fund, Columbia Real Estate Equity Fund, Columbia Small Cap Value Fund, Columbia Small Company Equity Fund, Columbia High Yield Fund, Columbia Quality Plus Bond Fund, Columbia Growth Fund, Columbia Acorn Fund, Columbia Acorn Trust, Inc., Columbia Funds Trusts[3], and each of the Columbia Funds (collectively, the "Funds"), hereby complain against the Defendants as follows:

## SUMMARY OF THE ACTION

1.     This derivative action seeks to recover damages to the Funds caused by defendants' breach of fiduciary duties, including under Section 36(b) of the Investment Company Act of 1940, and by the manipulative scheme in which the defendants participated to enrich themselves at the expense of the Funds and their shareholders by permitting favored investors to engage in rapid in and out trades in the Funds, a practice commonly called "market timing" or "timing."

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to Section 44 of the Investment Company Act of 1940 ("Investment Company Act" or the "ICA"), 15 U.S.C. § 80a-43; Section 214 of the Investment Advisors Act of 1940, 15 U.S.C. § 806-14.

---

[3] The Columbia Acorn Funds are series of the Columbia Acorn Trust. Each Columbia mutual funds is either a series of a Columbia Funds Trust, of which there are ten, or is incorporated independently (the "Incorporated Columbia Stock Funds"). The Columbia Acorn Trust, Columbia Funds Trusts and the Incorporated Columbia Stock Funds are collectively referred to as the "Trust."

3.    This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the state law claims asserted herein, because they arise out of and are part of the same case or controversy as plaintiffs' federal claims.

4.    Venue is proper in this judicial district because some or all of the Defendants conduct business in this district, some of the wrongful acts alleged herein took place or originated in this district. Defendants Columbia Fund Services, Inc., Columbia Management Advisors, Inc., and Columbia Funds Distributor, Inc. are headquartered in this district.

5.    In connection with the acts and practices alleged herein, Defendants directly or indirectly used the mails and instrumentalities of interstate commerce, including, but not limited to, t he m ails, interstate t elephone c ommunications, a nd t he f acilities o f t he n ational s ecurities markets and national securities exchanges.

## PARTIES

**Plaintiff**

6.    Plaintiff Harold B eardsley, a r esident of Nassau County, New York, purchased shares of the Columbia Disciplined Value Fund, Columbia International Equity Fund, Columbia Large C ap G rowth F und, C olumbia M id C ap Growth F und, C olumbia M id C ap V alue F und, Columbia Real Estate Equity Fund, Columbia Small Cap Value Fund, Columbia Small Company Equity Fund, Columbia High Yield Fund, and Columbia Quality Plus Bond Fund. These funds were purchased before December 2001 and Mr. Beardsley continues to hold such shares.

7.    Plaintiff Brad Smith, a resident of Chelan, Washington, purchased shares in Columbia Growth Fund before 1990 and continues to hold such shares.

8.    Plaintiff Steven Burda, a resident of Bucks County, Pennsylvania, purchased shares in the Columbia Acorn Fund in December, 2003 and continues to hold such shares.

*4*

**Columbia Defendants**

9.    FleetBoston Financial Corporation ("FleetBoston") is a financial services company and the ultimate parent of Fleet National Bank and defendants bearing the Columbia name. FleetBoston is organized under the laws of Rhode Island and is located at 100 Federal Street, Boston, Massachusetts 02110.

10.    Fleet National Bank ("Fleet Bank") is a wholly owned subsidiary of Defendant FleetBoston and is the direct parent of Defendant Columbia Management Group. Fleet Bank is incorporated in Rhode Island and is headquartered at 111 Westminster Street, Providence, Rhode Island 02993.

11.    Columbia Management Group, Inc. ("CMG") is the asset management arm of FleetBoston, and is among the world's 30 largest asset managers with over $140 billion in assets under management, as of October 31, 2002. CMG's asset management business is carried out primarily through Columbia Management Advisors, Inc. and Columbia Wanger Asset Management. CMG is an Oregon Corporation headquartered at 100 Federal Street, Boston, Massachusetts 02110.

12.    Columbia Fund Services, Inc. ("Columbia Services") is the transfer agent for the Columbia Funds. Columbia Services is responsible for identifying market-timing activity in the funds. Columbia Services is located at 100 Federal Street, Boston, Massachusetts 02110.

13.    Columbia Funds Distributor, Inc. ("Columbia Distributor") is the principal underwriter of the Columbia Funds' shares. According to the Columbia Funds website, Columbia Distributor is a wholly owned subsidiary of FleetBoston and a part of CMG. Columbia Distributor is compensated based on the amount of assets it causes to be invested in

the Columbia Funds.  Columbia Distributor is located at One Financial Center, Boston, MA 02111-2621.

14.    The Defendants described in paragraphs 9 through 13 are sometimes referred to as the "Columbia Defendants."

**Advisor Defendants**

15.    Columbia Wanger Asset Management ("WAM") is the advisor to the Columbia Acorn Funds. WAM is a registered investment advisor under the Investment Advisors Act of 1940 and has ultimate responsibility for overseeing the day-to-day operation of the Columbia Acorn Funds.  WAM receives advisory fees based on the total assets under management in the funds for which it acts as advisor.  WAM is an indirect wholly owned subsidiary of CMG. WAM is headquartered at 227 West Monroe, Suite 3000, Chicago, IL 60606.

16.    Columbia Management Advisors Inc. ("Columbia Advisors") is the advisor to all of the Columbia Funds except the Columbia Acorn Funds (the "Non-Acorn Columbia Funds"), which are advised by WAM.  Columbia Advisors receives advisory fees based on the total assets under management in the funds for which it acts as advisor.  Columbia Advisor is a wholly owned subsidiary of CMG and is located at 100 Federal Street, Boston, Massachusetts 02110.

17.    The defendants described in paragraphs 12 and 13 are sometimes referred to as the "Advisor Defendants."

**John Does 1-4**

18.    John Does 1 through 4 were at relevant times officers and employees of Columbia Distributor and negotiated and/or approved the agreements with the Timer Defendants (as defined in ¶39) as alleged herein.

19.     John Doe number 1 was at relevant times the Senior Vice President of Columbia Distributor.

20.     John Doe number 2 was at relevant times the President of Columbia Distributor.

21.     John Doe number 3 was at relevant times the National Sales Manager of Columbia Distributor.

22.     John Doe number 4 was at relevant times the Managing Director for National Accounts of Columbia Distributor.

23.     The Defendants referred to in paragraphs 16 through 19 are sometimes referred to as the "Columbia Distributor John Doe Defendants."

24.     The Defendants described in paragraphs 9 through 18 are sometimes referred to as the "Columbia Defendants."

25.     The Columbia Distributor John Doe Defendants and Columbia Distributor are sometimes referred to as the "Columbia Distributor Defendants."

26.     The Advisor Defendants and Columbia Distributor Defendants are sometimes referred to as the "Advisor/Underwriter Defendants."

## Trustee Defendants

27.     The "Trustee Defendants" are comprised of the members of the Board of Trustees for each of the Acorn Funds, Columbia Funds Trusts and Incorporated Columbia Stock Funds. The Trustees have overall management and supervisory responsibility for each of the Acorn Funds or Columbia Funds and are responsible for protecting the interests of the funds' shareholders. The Trustees also select the officers of the Acorn Funds and Columbia Funds who are responsible for the day-to-day activities of the funds.

28.    The members of the Board of Trustees of the Columbia Acorn Funds are defendants:

       a)     Margaret Eisen

       b)     Leo A. Guthart

       c)     Jerome Kahn, Jr.

       d)     Steven N. Kaplan

       e)     David C. Kleinman

       f)     Allan B. Muchin

       g)     Robert E. Nason

       h)     John A. Wing

       i)     Charles P. McQuaid

       j)     Ralph Wanger

29.    The defendants described in paragraph 25 are sometimes referred to as the "Acorn Trustees."

30.    The members of the Board of Trustees of the Columbia Funds Trusts and the Incorporated Columbia Stock Funds are defendants:

       a)     Douglas A. Hacker

       b)     Janet Langford Kelly

       c)     Richard W. Lowry

       d)     Charles R. Nelson

       e)     John J. Neuhauser

f)      Patrick J. Simpson

g)      Thomas E. Stitzel

h)      Thomas C. Theobald

i)      Anne-Lee Verville

j)      Richard L. Woolworth

k)      William E. Mayer

l)      Joseph R. Palombo

31.     The Columbia Funds Trusts' Trustees elect the officers of the Trust, have a fiduciary duty to the Trust and its beneficiaries and a duty to maintain the safety of the assets of the Trust. Each Columbia Funds Trusts' Trustee serves as a board member of 124 funds within the Columbia Family of Funds.

32.     The defendants described in paragraph 27 are sometimes referred to as the "Columbia Funds Trustees."

**Timer Defendants**

33.     Ilytat, L.P. ("Ilytat") is a San Francisco hedge fund that was engaged in market-timing the Columbia Funds at relevant times. Ilytat L.P. is located at 230 California Street, Suite 700, San Francisco, California, 94111.

34.     Ritchie Capital Management, Inc. ("RCM") is a hedge fund manager that was engaged in market-timing of the Columbia Funds at relevant times. Ritchie Capital Management, Inc. is located at 2100 Enterprise Ave, Geneva, Illinois 60134.

35.     Edward J. Stern ("Stern") is an individual who was engaged in market-timing the Columbia Funds at relevant times through entities he controlled described in paragraph 30

below. Edward J. Stern is a resident of New York County, New York and at all relevant times was the Managing Principal of CCP, CCP Ltd. and CIM described in paragraph 32 below.

36.     (a)     <u>Canary Capital Partners, LLC</u> ("CCP") is a New Jersey limited liability company with its principal offices in Secaucus, New Jersey. At relevant times, CCP was a hedge fund engaged in late trading and market-timing mutual funds, including the Columbia Funds.

(b)     <u>Canary Capital Partners, Ltd.</u> ("CCP Ltd.") is a Bermuda limited liability company. At relevant times, CCP Ltd. was also a hedge fund engaged in market-timing mutual funds.

(c)     <u>Canary Investment Management, LLC</u> ("CIM") is a New Jersey limited liability company with its principal offices in Secaucus, New Jersey. At all relevant times, CIM managed the assets of CCP and CCP Ltd. As of July 2003, Canary Investment Management had received approximately $40 million in management and incentive fees from CCP and CCP Ltd. The size of these fees reflects the phenomenal success Canary hedge funds enjoyed both in terms of their trading results and the amount of capital they were able to gather in the fund in large part due to the events and circumstances described in this Complaint. CCP, CCP Ltd. and CIM are collectively referred to herein as "Canary" or the "Canary Defendants."

37.     <u>Daniel Calugar</u> ("Calugar") is an individual who was engaged in market-timing the Columbia Funds at relevant times. Calugar is the owner and President of Security Brokerage Inc. The Securities and Exchange Commission ("SEC") charged Calugar and Security Brokerage

in December 2003 with securities fraud involving late trading and market timing in mutual funds in exchange for "sticky asset"[4] investments in the hedge funds of mutual fund companies.

38.     Sal Giacalone ("Giacalone") is an individual who was engaged in market-timing the Columbia Funds at relevant times. According to an article published on CNNMoney.com on March 2, 2004 Giacalone is a financial consultant at Smith Barney's Waltham, Massachusetts branch.

39.     D.R.Loeser ("Loeser") a registered investment advisor, was engaged in the business of market-timing the Columbia Funds at relevant times.

40.     Signalert Corporation ("Signalert"), a registered investment advisor, was engaged in market-timing the Columbia Funds at relevant times. Signalert Corporation is located at 150 Great Neck Road, Suite 301, Great Neck, New York 11021.

41.     Alan Waldbaum ("Waldbaum") is an individual who was engaged in the market-timing the Columbia Funds at relevant times.

42.     Tandem Financial Services, Inc. ("Tandem"), an investment advisor, was engaged in market-timing the Columbia Funds at relevant times. Tandem Financial Services, Inc. is located at 6600 Decarie Blvd., Suite 200, Montreal, Quebec H3X 2K4.

43.     The defendants described in paragraphs 29 through 38 are sometimes referred to as the "Timer Defendants."

44.     The true identities, roles and capacities of John Does 5-100 have yet to be ascertained. Included in John Does 5-100 are hedge funds, hedge fund managers, brokerage

---

[4] Portfolio managers and advisers like WAM and Columbia Advisor make their profit from fees charged to the funds for financial advice and other services. Such fees are typically a percentage of the assets in the fund, so the more assets in the family of funds, the more money the advisers and managers stand to make. This fee assessment also applies to hedge funds. Knowing this, timers frequently offer the fund advisor static, non-trading assets in exchange for the right to time. These static assets are called "sticky assets."

firms and fiduciaries to the Columbia Funds who participated, exploited and perpetrated the unlawful trading in Columbia Funds and knowingly violated the policies established by the Columbia Funds. In addition, it includes those entities and individuals who conspired and assisted in exploiting the opportunities provided by the Columbia Defendants to make illicit trades in the Columbia Funds. Such defendants directly or indirectly profited by their own, or others, ability to engage in improper late trading and timing at the expense of non-participating Columbia Funds investors. Furthermore, John Does 5-100 actively enticed the Columbia Defendants to breach the fiduciary duties owed to the Columbia Funds through numerous means including the deposit of assets in Columbia hedge funds in exchange for the right to make short-term and late trades in Columbia Funds. The identities of John Does 5-100 will be disclosed in amendments to this complaint when the true identities are discovered.

45.    The defendants described in paragraphs 9 through 42 are sometimes collectively referred to as the "Defendants."

**Nominal Defendants**

46.    Columbia Acorn Trust is a Massachusetts Business Trust organized in 1992 as successor to The Acorn Fund, Inc., which became the Columbia Acorn Fund series of the Trust. Six mutual funds currently comprise the Columbia Acorn Trust: Columbia Acorn Fund, Columbia Acorn International, Columbia Acorn USA, Columbia Acorn Select, Columbia Acorn International Select, and the Columbia Thermostat Fund. Each Fund is a series of the Trust, and each Fund is an open-end, management investment company.

47.    The Columbia Funds Trust I, II, III, IV, V, VI, VII, VIII, IX and XI are collectively referred to herein as the Columbia Funds Trust. Each of the Columbia Funds Trusts is a Massachusetts Business Trust. Each Columbia mutual fund is a series issued by one of the

*12*

Columbia Funds Trusts except the Incorporated Columbia Stock Funds. Each Columbia Funds Trust is registered under the Investment Company Act of 1940 as an open-end management investment company.

48.    The funds comprising the <u>Incorporated Columbia Stock Funds</u> are each individually incorporated under the laws of the State of Oregon as open-end investment companies registered under the Investment Company Act of 1940 and are not a series of any Columbia Funds Trust. The Incorporated Columbia Stock Funds include the Columbia Common Stock Fund, Columbia Growth Fund, Columbia International Stock Fund, Columbia Mid Cap Growth Fund, Columbia Small Cap Growth Fund, Columbia Real Estate Equity Fund, Columbia Technology Fund, Columbia Strategic Investor Fund, Columbia Balanced Fund, Columbia Short Term Bond Fund, Columbia Fixed Income Securities Fund, Columbia National Municipal Bond Fund, Columbia Oregon Municipal Bond Fund, Columbia High Yield Fund, Columbia Daily Income Company.

49.    <u>Columbia Small Company Equity Fund</u> is a mutual fund that seeks capital appreciation. The fund ordinarily invests at least 80% of assets in equity securities of companies with capitalizations of $1.5 billion or less. The Columbia Small Company Equity Fund is a series of the Columbia Funds Trust XI.

50.    <u>Columbia Small Cap Value Fund</u> is a mutual fund that seeks long-term capital appreciation. The fund normally invests at least 80% of assets in equity securities issued by companies with market capitalizations under $1.5 billion. In addition to common stocks, the fund may invest in convertible securities rated at least BB, preferred stocks, and investment-grade corporate debt securities. The Columbia Small Cap Value Fund is a series of the Columbia Funds Trust VI.

51.    Columbia Growth Fund seeks capital appreciation. The fund invests primarily in common stocks. When selecting investments, management considers sales trends, earnings, profit margins, the potential for new-product development, the company's competitive position within its industry, the ability of management, and investment in research and facilities. Columbia Growth Fund is incorporated under the laws of the State of Oregon and is registered under the Investment Company Act of 1940 as an open-end investment company.

52.    Columbia Acorn Fund is a mutual fund that invests primarily in common stocks of small and medium-sized companies. Up to 33% of the fund's assets may be invested in foreign markets. Columbia Acorn Fund is organized as a series of shares of the Nominal Defendant Columbia Acorn Trust.

53.    Columbia Disciplined Value Fund is a mutual fund that seeks long-term capital appreciation and considers income as secondary. The fund normally invests at least 80% of assets in common stocks, preferred stocks, and convertibles. The advisor seeks securities it judges to be undervalued based on cash flow, return on equity, return on assets, fixed-charge coverage, and ratio of market capitalization to revenues. The Columbia Disciplined Value Fund is a series of the Columbia Funds Trust XI.

54.    Columbia International Equity Fund is a mutual fund that seeks long-term capital appreciation. The fund typically invests at least 80% of assets in equity securities, primarily the equity securities of foreign issuers, and maintains investments in at least three foreign countries. The Columbia International Equity Fund is a series of the Columbia Funds Trust XI.

55.    Columbia Large Cap Growth Fund is a mutual fund that seeks long-term capital appreciation. The fund normally invests at least 80% of assets in a broadly diversified portfolio of equity securities. The fund invests mainly in the securities of U.S. issuers, but may invest up

to 20% of assets in foreign securities. The Columbia Large Cap Growth Fund is a series of the Columbia Funds Trust XI.

56.    Columbia Mid Cap Growth Fund is a mutual fund that seeks capital appreciation. The fund invests at least 80% of assets in stocks of companies with a market capitalization, at the time of purchase, equal to or less than the largest stock in the Russell Midcap Index. The fund may also invest, to a limited extent, in foreign securities, including American Depository Receipts. Columbia Mid Cap Growth Fund is incorporated under the laws of the State of Oregon and is registered under the Investment Company Act of 1940 as an open-end investment company.

57.    Columbia Mid Cap Value Fund is a mutual fund that seeks long-term capital growth and invests primarily in middle capitalization stocks. These are stocks of mid-size companies that have market capitalizations similar in size to those in the Russell Mid Cap Value Index. The Columbia Mid Cap Value Fund is a series of the Columbia Funds Trust III.

58.    Columbia Real Estate Equity Fund is a mutual fund that seeks capital appreciation and current income. The fund normally invests at least 80% of assets in equity securities issued by companies engaged in the real estate industry. It may invest the balance of assets in equity securities of other types of companies and in investment-grade debt securities. Columbia Real Estate Equity Fund is incorporated under the laws of the State of Oregon and is registered under the Investment Company Act of 1940 as an open-end investment company.

59.    Columbia High-Yield Fund is a mutual fund that seeks current income with capital appreciation as a secondary objective. The fund generally invests at least 80% of assets in fixed-income securities rated BB or lower. Columbia High-Yield Fund is incorporated under the

laws of the State of Oregon and is registered under the Investment Company Act of 1940 as an open-end investment company.

60.     Columbia Quality Plus Bond Fund is a mutual fund that seeks current income consistent with prudent risk of capital and normally invests at least 50% of assets in high quality securities that have one of the top two ratings assigned by S&P or Moody's or unrated securities determined by management to be of comparable quality. The Columbia Quality Plus Bond Fund is a series of the Columbia Funds Trust III.

61.     The Columbia Funds are mutual funds managed by subsidiaries of FleetBoston and are listed on Exhibit A. They are each a series of the Columbia Fund Trusts, Columbia Acorn Trust or individually incorporated under the laws of the State of Oregon as open-end investment companies registered under the Investment Company Act of 1940. As of December 31, 2003, there were 132 Columbia Funds.

## FACTUAL BACKGROUND

### Market Timing

62.     Like all other mutual funds, the Columbia Funds' shares are valued once a day, at 4:00 p.m. Eastern Time, following the close of the financial markets in New York. The price, known as the Net Asset Value ("NAV"), reflects the closing prices of the securities that comprise a particular fund's portfolio plus the value of any uninvested cash that the fund manager maintains for the fund. Thus, although the shares of a mutual fund are bought and sold all day long, the price at which the shares trade does not change during the course of the day. Orders placed any time up to 4:00 p.m. are priced at that day's NAV, and orders placed after 4:01 p.m. are priced at the next day's NAV. This practice, to price orders at the next day's NAV, is known as "forward pricing" and has been required by law since 1968.

63.    <u>Late Trading</u>.  Because of forward pricing, mutual funds are susceptible to a manipulative practice known as "late trading."  Late trading is the unlawful practice of allowing some investors to purchase mutual fund shares **after** 4:00 p.m. at that day's NAV, even though such after-hours trades should be priced at the next day's NAV.    Late traders seek to take advantage of events that occur after the close of trading on any given day, while purchasing shares of mutual funds at prices that do not reflect those events.  "Late trading can be analogized to betting today on yesterday's horse races."[5]  The late trader's arbitrage profit comes dollar-for-dollar out of the mutual fund that the late trader buys.  When the late trader redeems his shares and claims his profit, the mutual fund manager has to either sell stock, or use cash on hand -- stock and cash that used to belong to the shareholders and the fund -- to give the late trader his gain.  The late trader's profit is revenue withheld from the shareholders and the mutual fund.  The forward pricing r ule was enacted precisely t o prevent this kind of a buse.  *See* 17 C.F.R. §270.22c-1(a).

64.    <u>Timing</u>.  Another manipulative practice used by Timer Defendants to exploit mutual fund pricing is known as "timing," which involves short-term "in-and-out" trading of mutual fund shares.  One timing scheme is "<u>time zone arbitrage</u>," which takes advantage of the fact that some funds use "stale" prices to calculate NAV.  These prices are "stale" because they do not necessarily reflect the "fair value" of such securities as of the time the NAV is calculated.  A typical example is a U.S. mutual fund that invests in Japanese companies.  Because of the time zone difference, the Japanese market closes at 2:00 a.m. New York time.  When the NAV is calculated at 4:00 p.m. in New York, it is based upon market information that is fourteen hours old.  If there have been positive market moves during the New York trading day that will cause

---

[5]    *State of New York v. Canary Capital Partners et al.*, Supr. Ct. of N.Y., ¶ 10 ("NYAG Complaint").

the Japanese market to rise when it opens later, the stale Japanese prices will not reflect the price change and the fund's NAV will be artificially low. A trader who buys the Japanese fund at the "stale" p rice i s v irtually a ssured o f a profit t hat c an b c realized t he n ext d ay b y se lling. B y "timing" the fund, an investor seeks to earn repeated profits in a single mutual fund.

65.    Another market timing scheme is "<u>liquidity arbitrage</u>."    Under this scheme, a trader seeks to take advantage of stale prices in certain infrequently traded investments, such as high-yield bonds or the stock of small capitalization companies. The fact that such securities may not have traded for hours before the 4:00 p.m. closing time can render the fund's NAV stale, and thus open it to being timed.

66.    The device of market timing is inconsistent with and inimical to the purpose for mutual funds as long-term investments. Mutual funds are designed for buy-and-hold investors, and are therefore the preferred investment instruments for many retirement and savings accounts. Nonetheless, certain investors attempt to make quick in-and-out trades in order to exploit t he i nefficiency of m utual f und p ricing. T he e ffect o f m arket t iming i s t o a rtificially increase the frequency of transactions in a mutual fund, and consequently <u>increase the fund's transaction costs</u> substantially above what would be incurred if only buy-and-hold investors were trading in the fund's shares. <u>The increased transaction costs, as well as additional capital gains taxes, reduces the assets of the fund and, in turn, its NAV</u>.

67.    Market timing also disrupts the trading program of the funds' managers forcing ill-timed redemption and depleting cash in the fund.

68.    Continued successful timing requires the complicity of a funds' management, which the Timer Defendants received.

69.     Timers also frequently pursue a strategy of trading through third parties, *i.e.*, brokers or other intermediaries who process large numbers of mutual fund trades every day through omnibus accounts where trades are submitted to mutual fund companies en masse. This way, timers hope their activity will be lost amid the other trades in the omnibus account. This is called "timing under the radar."

70.     Because of the harm timing can cause, honest fund managers often seek to minimize the disruptive impact of timers by keeping cash on hand to pay out the timers' profits without having to sell stock. However, such efforts by honest fund managers to counter the ill effects of market timing on their funds does not eliminate the harm, it only reduces it. Indeed, one recent study estimated that U.S. mutual funds lose $4 billion per year to timers. *See* Eric Zitzewitz, Who Cares About Shareholders? Arbitrage-Proofing Mutual Funds (October 2002), http://faculty-gsb.stanford.edu/zitzewitz/Research/arbitrage1002.pdf.

71.     Insider Timing. "Timing" is not a quick-buck device limited to third parties like Calugar who act either alone or in complicity with fund managers. Fund insiders, like portfolio managers, are sometimes unable to resist the opportunity for quick profits at the expense of the funds offered by timing opportunities. At least one Columbia Fund manager succumbed to this temptation and timed his or her own 401(k) retirement accounts, according to FleetBoston's web site.

## SUBSTANTIVE ALLEGATIONS

## PROSPECTUS DISCLOSURES

72.     The Columbia Funds, like most mutual funds, have internal policies concerning market timing.

73.    For example, the prospectuses filed February 26, 1999 for each of the funds

within the Columbia Acorn Trust state, in relevant part:

> THE ACORN FUNDS DO NOT PERMIT MARKET-TIMING and have adopted
> policies to discourage this practice.
>
> Generally, you will be permitted to make up to 4 round trip exchanges per year
> (a round trip is an exchange out of one fund into another fund, and then back
> again).
>
> YOU MAY ONLY EXCHANGE BETWEEN ACCOUNTS THAT ARE
> REGISTERED IN THE SAME NAME, ADDRESS, AND TAXPAYER
> IDENTIFICATION NUMBER.
> …
> Acorn may temporarily or permanently terminate the exchange plan privilege of
> any investor who makes excessive use of the plan. **Excessive trading can hurt
> fund performance and shareholders.**
>
> **Acorn may refuse exchange purchases by any person or group, if Acorn believes
> the purchase will be harmful to existing shareholders.**

(emphasis in bold added).

74.    Later prospectuses for the each of the funds within the Columbia Acorn Trust

(Funds) filed with the SEC on April 30, 2003 state:

> **The Fund does not permit short-term or excessive trading in its shares.**
> Excessive purchases, redemptions or exchanges of Fund shares disrupt portfolio
> management and increase Fund expenses. In order to promote the best interests
> of shareholders, **the Fund (and any other funds distributed by Liberty Funds
> Distributor, Inc.) reserves the right to reject any purchase order or exchange
> request, particularly from market timers or investors who, in the adviser's
> opinion, have a pattern of short-term or excessive trading or whose trading
> has been or may be disruptive.**

(emphasis added).

75.    The prospectuses for the Columbia Acorn International and Columbia Acorn

Foreign Forty Funds, both series of shares within the Columbia Acorn Trust state:

> **In addition, if you redeem or exchange shares of the Fund that you have owned
> 60 days or less, the Fund will charge you a redemption fee of 2% of the
> redemption proceeds.** The Fund will use the "first-in" "first-out" method to

*20*